**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

_____
)
ADVANFORT COMPANY, *et al.*,                    )
)
          Plaintiffs,                                  )
)
      v.                                                     )  C.A. No. 1:15-cv-220 (LO)(IDD)
)
INTERNATIONAL REGISTRIES, INC., *et al.*,   )
)
          Defendants.                               )
_____)

**DEFENDANT INTERNATIONAL REGISTRIES, INC.'s
<u>MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS</u>**

Charles F. B. McAleer, Jr. (VSB No. 24430)
Timothy P. O'Toole (VSB #39739)
Maryam Jamshidi (*)
Miller & Chevalier Chartered
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 626-5800
Facsimile:   (202) 626-5801
Email: cmcaleer@milchev.com
(*) *pro hac vice* application to be filed

*Attorneys for Defendant
International Registries, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................1

OVERVIEW OF PARTIES AND CLAIMS ..............................................................2

ARGUMENT ...............................................................................................................7

I.     THE COMPLAINT MUST BE DISMISSED PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(B)(6) BECAUSE PLAINTIFFS
FAIL TO STATE A CLAIM AGAINST IRI FOR WHICH RELIEF CAN
BE GRANTED ...................................................................................................7

     A.     Plaintiffs' Complaint Fails to State Facts Sufficient to Establish
Any Viable Cause of Action against IRI ...............................................7

          1.     Plaintiffs' Claims against IRI Should be Dismissed Based
on the Act of State Doctrine........................................................8

          2.     Plaintiffs Have Failed to Sufficiently Allege that IRI
Tortiously Interfered with Contracts under Count III...............12

          3.     Plaintiffs Have Failed to Sufficiently Allege that IRI
Tortiously Interfered with Business Expectancies under
Count IV....................................................................................17

     B.     Plaintiffs' Complaint Fails to State Facts Sufficient to Establish
that Any Cause of Action against IRI Was Properly Joined in the
Same Lawsuit with the Cause of Action against the Other
Defendants ...........................................................................................19

     C.     Plaintiffs' Complaint Fails to State Facts Sufficient to Establish
that Any of the Plaintiffs Has the Legal Right or Standing to Assert
the Claims in Counts III and IV against IRI ........................................21

CONCLUSION...........................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance Technology Group, LLC v. Achieve 1, LLC*,
No. 3:12-CV-701, 2013 WL 143500 (E.D. Va. Jan. 11, 2013) ...................................13, 14, 18

*Allied Bank Int'l v. Banco Credito Agricola de Cartago*,
757 F.2d 516 (2d Cir. 1985)..................................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................7, 8, 16, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................7, 8, 16

*Brown v. HSBC Mortg. Corp.*,
No. 1:10–cv–1427, 2011 WL 3101780 (E.D. Va. July 22, 2011) ...........................................7

*Carter Machinery Co. Inc. v. Gonzalez*,
No. Civ. A. 97–0332–R, 1998 WL 1281295 (W.D. Va. Mar. 27, 1998) ...............................22

*CGM, LLC v. BellSouth Telecoms., Inc.*,
664 F.3d 46 (4th Cir. 2011) ...............................................................................................22

*Commerce Funding Corp. v. Worldwide Sec. Serv. Corp.*,
249 F.3d 204 (4th Cir. 2001) .............................................................................................17

*Commercial Business Sys. v. Halifax Corp.*,
484 S.E. 2d 892 (Va. 1997)................................................................................................18

*Commercial Energies, Inc., v. United Airlines, Inc.*,
25 F.3d 1038 (4th Cir. 1994) .............................................................................................14

*Duggin v. Adams*,
360 S.E. 2d 832 (Va. 1987).................................................................................................12

*Eckert Int'l.,v. Gov't of Sovereign Democratic Republic of Fiji*,
834 F. Supp. 167 (E.D. Va. 1993) .......................................................................................8

*Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*,
189 F. Supp. 2d 385 (E.D. Va. 2002) ....................................................................13, 15, 18

*Evans v. B.F. Perkins Co.*,
166 F.3d 642 (4th Cir. 1999) .........................................................................................22, 23

*Eweka v. Hartford Life & Accident, Ins., Co.*,
955 F. Supp. 2d 556 (E.D. Va. 2013) ...................................................................................6

*Giant of Va., Inc. v. Pigg*,
  152 S.E. 2d 271 (1967) ...................................................................................15

*Hunt v. Mobil Oil. Corp.*,
  550 F.2d 68 (2d Cir. 1977)................................................................................9

*Keepe v. Shell Oil Co.*,
  260 S.E. 2d 722 (Va. 1979)..............................................................................24

*Lauritzen v. Larsen*,
  345 U.S. 571 (1953)........................................................................................10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................................22

*Mansfield M.D. v. Anesthesia Assocs. Ltd*,
  No. 1:07-cv-941, 2008 WL 1924029 (E.D. Va. Apr. 28, 2008) ............................17

*Masco Contr. Servs. East, Inc. v. Beals*,
  279 F. Supp. 2d 699 (E.D. Va. 2003) ...........................................................13, 17

*Miller v. Brown*,
  462 F.3d 312 (4th Cir. 2006) ...........................................................................21

*Moore v. N. Homes of Pa., Inc.*,
  80 F.R.D. 278 (W.D. Va. 1978)........................................................................23

*Nash v. Green Tree Servicing, LLC*,
  943 F. Supp. 2d 640 (E.D. Va. 2013) (O'Grady, J.)..........................................12

*Oetjen v. Central Leather Co.*,
  246 U.S. 297 (1918).........................................................................................8

*Peterbilt of Bristol, Inc., v. Mac Trailers, Mfg.*,
  No. 1:09-CV-00058, 2009 WL 4063663 (W.D. Va. Nov. 23, 2009) ................17, 18

*Powers v. Cherin*,
  452 S.E. 2d 666 (Va. 1995).........................................................................20, 21

*In re Refined Petroleum Prods. Antitrust Litig.*,
  649 F. Supp. 2d 572 (S.D. Tex. 2009), *aff'd Spectrum Stores, Inc., v. Citgo
  Petroleum, Inc.*, 632 F.3d 938 (5th Cir. 2011)................................................10, 11

*Rent Stabilization Ass'n v. Dinkins*,
  5 F.3d 591 (2d Cir. 1993)................................................................................22

*Rock-Ola Mfg Corp. v. Wertz*,
  249 F. 2d 813 (4th Cir. 1957) ..........................................................................23

*Sayre Enters., Inc., v. Allstate Ins. Co.*,
   448 F. Supp. 2d 733 (W.D. Va. 2006) .................................................................6

*Schur v. Sprenkle*,
   84 Va. Cir. 418 (Va. Cir. Ct. 2012).................................................................24

*Simbeck, Inc., v. Dodd-Sisk Whitlock Corp.*,
   44 Va. Cir. 54 (Va. Cir. Ct. 1997).................................................................15

*Skillstorm, Inc. v. Elec. Data Sys., LLC*,
   666 F. Supp. 2d 610 (E.D. Va. 2009) ......................................................12, 16, 19

*Spectrum Stores, Inc., v. Citgo Petroleum, Corp.*,
   632 F.3d 938 (5th Cir. 2011) .................................................................8

*U.S. Golf Learning Institute, LLC, v. Club Managers Ass'n of America*,
   No. 1:11-CV-869, 2011 WL 5599379 (E.D. Va. Nov. 15, 2011) ...........................................13

*Underhill v. Hernandez*,
   168 U.S. 250 (1897).................................................................8

*United States v. AdvanFort*,
   Case No. 1:13-cr-53 (GBL) .................................................................3

*W.S. Kirkpatrick & Co. v. Evntl. Tectonics Corp., Int'l*,
   493 U.S. 400 (1990).................................................................9, 11

*Wag More Dogs, LLC v. Cozart*,
   680 F.3d 359 (4th Cir. 2012) .................................................................7

*Warth v. Seldin*,
   422 U.S. 490 (1975).................................................................22

*Zurich American Ins. Co., v. Turbyfill*,
   No. 7:10–cv–282, 2010 WL 4065527 (E.D. Va. Oct. 15, 2010) ...........................................12


**Statutes**

18 U.S.C. § 922.................................................................3

Foreign Sovereign Immunities Act,
   28 U.S.C. § 1330.................................................................8

28 U.S.C. § 1441 .................................................................19

Va. Code Ann. § 8.01-272 .................................................................20

Va. Code Ann. § 13.1-758 ........................................................................................................23

**Other Authorities**

Fed. R. Civ. P. 8........................................................................................................7, 16

Fed. R. Civ. P. 12.................................................................................................. *passim*

Restatement (Third) of Foreign Relations Law (1986)............................................9, 10

## **INTRODUCTION**

Defendant International Registries, Inc. (IRI) hereby moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  Plaintiffs' Complaint seeks to assert Virginia state law "tortious interference" claims against IRI based on actions taken by the Republic of the Marshall Islands Maritime Administrator (RMI Maritime Administrator), a duly authorized arm of the Republic of the Marshall Islands (RMI or Marshall Islands), actions which IRI allegedly helped to execute.  According to the Complaint, those actions were:  (1) working with the RMI Maritime Administrator  in suspending AdvanFort Company (AdvanFort) and/or AdvanFort International, Inc. (AdvanFort International) (corporate entities to which the individual plaintiffs all claim some relationship) from providing security services to Marshall Islands registered vessels; (2) working with the RMI Maritime Administrator to communicate that suspension to Marshall Islands flagged ships; and (3) directing Marshall Islands flagged ships not to use AdvanFort for security services during the suspension. DE 1-3 (hereafter "Complaint") at ¶¶ 65-67.  As a matter of law, such allegations fail to state a claim for relief because they improperly seek to premise tort claims on quintessential acts of State, and also because they fail to state a cause of action for tortious interference with contract or business expectancies under Virginia law.  In addition, Plaintiffs' attempt to improperly join their tortious interference claims against IRI with their defamation claims against other defendants, which arise from an entirely different transaction, represents an improper effort to defeat federal jurisdiction.  Finally, Plaintiffs' claims must be dismissed because, for reasons discussed more fully below, they lack standing to assert them.  Accordingly, this Court should grant IRI's motion, and dismiss the case against it with prejudice.

## OVERVIEW OF PARTIES AND CLAIMS[1]

Defendant IRI is a Virginia corporation that, based on the allegations in the Complaint, "administers the maritime and corporate programs of the Republic of the Marshall Islands," which is "an island country located near the equator in the Pacific Ocean" and "the top vessel registry" in the world.  *Id.* ¶¶ 9, 57, 62.  The Marshall Islands has delegated to the RMI Maritime Administrator "responsibility for performing various governmental functions on behalf of RMI including administering all matters pertaining to vessels of RMI that are subject to the provisions of the Maritime Act, promulgating rules and regulations to carry out the provisions of the Maritime Act (the "Maritime Act"), and ensuring the seaworthiness of vessels registered under the laws of [RMI]."  *Id.* ¶ 58.  According to Plaintiffs, IRI "provide[s] technical and administrative services to" RMI's Maritime Administrator and "assists the Administrator in performing its government functions all over the world and wherever vessels seeking to be registered under RMI's flag may be located."  *Id.* ¶ 59.  "Many of the management personnel of IRI are also officers of the Maritime Administrator of RMI."  *Id.* ¶ 60.

The current dispute before the Court – to the extent it involves IRI – arose when, on January 7, 2014, Plaintiff AdvanFort and/or Plaintiff AdvanFort International (their Complaint does not specify which entity) allegedly received a letter from the RMI Maritime Administrator indicating that "***it*** was no longer permitted to provide security services to Marshall Islands registered vessels, effective immediately."  *Id.* ¶ 65 (emphasis added).  Subsequently, according to the Complaint, unspecified "[o]fficials from IRI": (a) "informed AdvanFort's clients that

---

[1] The following is a summary of the relevant allegations in Plaintiffs' Complaint.  Any properly pled facts contained in the Complaint, of which there are very few, must be taken as true for purposes of this motion to dismiss only.  In all other respects, IRI hereby reserves its rights and remedies in this case, including its right to contest any factual allegations made by Plaintiffs, if and when necessary.

AdvanFort had committed illegal acts which resulted in the ban [by the RMI Maritime Administrator]," (b) "directed" "customers of AdvanFort, whose vessels were flagged under RMI . . . not to allow AdvanFort personnel on their vessels," and (c) "emailed all of its flagged ships and notified them of AdvanFort's suspension and forbade them from using AdvanFort's services while the company remained under suspension."  *Id.* ¶¶ 66, 67.  Plaintiffs allege that this suspension lasted approximately six months, and that AdvanFort and/or AdvanFort International was reinstated on June 17, 2014.  *Id.* ¶ 70.

On January 22, 2015, AdvanFort and AdvanFort International, along with two individuals, Samir and Ahmed Farajallah, filed suit against IRI in the Circuit Court of Fairfax County, Virginia.  According to their Complaint, Plaintiff AdvanFort is a District of Columbia corporation that has its corporate headquarters in Herndon, Virginia.  *Id.* ¶ 1.  Plaintiff AdvanFort International alleges that it is a Delaware corporation with "[i]ts address" in Lewes, Delaware.  *Id.* ¶ 2.[2]  Neither of the corporate plaintiffs is alleged to be authorized to transact business in the Commonwealth of Virginia.  Both companies allegedly provide maritime security around the world.  *Id.* ¶ 3; *see also id.* ¶ 12 (AdvanFort and AdvanFort International are "global providers of security solutions for commercial shipping on land, sea and air as well as for government, private port and terminal operations.").  As for the individual litigants, Plaintiff Samir Farajallah is alleged to be a resident of Dubai, United Arab Emirates, who is "an owner and Chief Executive Officer of" both corporate plaintiffs.  *Id.* ¶ 4.  Plaintiff Ahmed Farajallah is alleged to be a resident of Fairfax County, Virginia and is the "Business Development Manager"

---

[2] This Court has some familiarity with AdvanFort.  *See United States v. AdvanFort,* Case No. 1:13-cr-53 (GBL) (criminal proceedings in which AdvanFort pled guilty to one count of aiding and abetting the making of a false statement during the acquisition of firearms in violation of 18 U.S.C. § 922(a)(6)). Plaintiff Ahmed Farajallah also appears to have been arrested in connection with the same incident. *United States v. Farajallah*, Case No. 1:11-mj-551 (TRK).

of AdvanFort and AdvanFort International.  *Id.* ¶ 5.  Both individual plaintiffs "have substantial involvement in the operations" of the corporate plaintiffs.  *Id.* ¶ 16.  However, Ahmed Farajallah is not alleged to be a director, officer or shareholder of either of the corporate plaintiffs.

Plaintiffs' substantive allegations against IRI stem entirely from their January 2014-June 2014 suspension.  According to Plaintiffs, this suspension, and its communication to them and to Marshall Islands' flagged vessels, constituted both tortious interference with unspecified contracts and business expectancies.  In support of this allegation, Plaintiffs claim that their suspension "was improper and done without providing proper notice to AdvanFort or a meaningful opportunity to respond to the allegations."  *Id.* ¶ 68.  Plaintiffs do not, however, identify any provision of Marshall Islands law violated by their suspension.  Similarly, while Plaintiffs also allege that, as a result of the suspension, they "had lost a significant portion of its customer base," *id.* ¶ 71, they fail to identify any specific contract or business expectancy that any of the Plaintiffs allegedly lost as a result of any alleged actions by IRI.  *Id.* ¶¶ 73-75 & ¶ 122.

Plaintiffs also make boilerplate allegations about the state of mind that supposedly permeated these purportedly tortious acts, claiming that IRI "engaged in this conduct willfully, intentionally, purposefully, and without legal justification."  *Id.* ¶ 77; *see also id.* ¶ 118 ("IRI . . . engaged in intentional, malicious, bad faith, non-privileged and unjustified tortious conduct, designed to, and which did, interfere with Plaintiffs' advantageous business relationships as set forth above."); *id.* ¶ 124 ("The Defendants' tortious interference has been willful, wanton, and in malicious disregard of Plaintiffs' rights.").  They plead no actual facts, however, alleging only that "[t]he methods by which the Defendants have interfered, as alleged above, have been improper and consisted of, among other things, sharp dealing, unfair competition, defamation,

and undue influence, including but not limited to the facts described in the preceding paragraphs." *Id.* ¶ 123.  Plaintiffs do not allege that IRI was a "competitor" of any of the Plaintiffs and do not allege any specific action by IRI that could be described or categorized as acts of "sharp dealing," "unfair competition," "undue influence" or "defamation."

Apart from IRI, Plaintiffs also bring suit against two other defendants, John A.C. Cartner and The Maritime Executive, Inc. (TME).  Defendant Cartner is a maritime lawyer, who resides in North Carolina.  *Id.* ¶ 7.  Defendant TME is a publishing company located in Fort Lauderdale, Florida.  *Id.* ¶¶ 6, 7.  The complaint against Defendants Cartner and TME does not arise out of the suspension by the Republic of the Marshall Islands, but instead stems entirely from an article that Defendant Cartner allegedly wrote, and Defendant TME allegedly published, that purportedly defamed all Plaintiffs.  *Id.* ¶¶  45, 48.  As to those two Defendants, Plaintiffs assert claims of defamation (Count I) and defamation *per se* (Count II).  Oddly, the Complaint also alleges tortious interference claims (Counts III and IV) against Defendant Cartner but does not contain any facts to explain how or why the tortious interference claims against IRI – based on the Marshall Islands suspension – relate to the tortious interference claims against Cartner, who is alleged to have written a defamatory article, which IRI was not alleged to have read, much less participated in.  Specifically, the Complaint contains no allegations that IRI and Cartner acted jointly in any way whatsoever.

Interestingly, this was not Plaintiffs first suit regarding the article written by Cartner. The instant action is at least the second complaint Plaintiffs have filed against TME with respect to the purported defamation.  On January 5, 2015, Plaintiffs filed a complaint for defamation against TME, in Fairfax County Court, substantially based on the same allegations included in its January 20, 2015 complaint.  IRI was not named as a defendant in this earlier complaint, which

is attached here as Exhibit A.[3]  The January 5, 2015 Fairfax case, which apparently has not been served on TME, would unquestionably have been removable even without consideration of whether any defendants had been improperly joined since both Cartner and TME are diverse as to the Plaintiffs.  The current lawsuit, however, included IRI, a Virginia defendant, even though IRI had no alleged relationship to the defamation, and even though the actions which IRI had allegedly undertaken do not conceivably amount to a cause of action under Virginia law.  As a result, after service in the current lawsuit, TME and Cartner filed a notice of removal, on the ground that IRI's citizenship should not count for diversity purposes, as Plaintiffs had improperly joined their removable defamation case with the case against IRI, in which there was no possibility of relief. DE 1 at 2-3.  Prior to the removal, IRI had taken the purely defensive step of filing a demurrer and motion craving oyer to protect its state court rights.  *See Sayre Enters., Inc., v. Allstate Ins. Co.*, 448 F. Supp. 2d 733, 735-36 (W.D. Va. 2006) (holding that mere filing of demurrer and motion craving oyer does not waive defendant's right to removal, "without further action on the part of the defendant leading to a decision on the merits").  Now that the case has been removed, IRI respectfully moves to dismiss the allegations against it, on the ground that Plaintiffs have not, and cannot, state any viable cause of action against IRI.

---

[3] *Eweka v. Hartford Life & Accident, Ins., Co.*, 955 F. Supp. 2d 556, 560 n.4 (E.D. Va. 2013) (courts may take notice of public records, such as documents docketed in other judicial cases, in considering motions to dismiss under Fed. R. Civ. P. 12).

## ARGUMENT

## I.   THE COMPLAINT MUST BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM AGAINST IRI FOR WHICH RELIEF CAN BE GRANTED

### A.   Plaintiffs' Complaint Fails to State Facts Sufficient to Establish Any Viable Cause of Action against IRI

On a motion to dismiss, this Court must view the facts in the light most favorable to the plaintiff but, under Federal Rule of Civil Procedure 8(a), to state a claim for relief, plaintiff is required to set forth facts, and not formulaic labels. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).   In other words, as the Supreme Court has made clear, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (dismissing complaint when plaintiffs had "not nudged their claims across the line from conceivable to plausible").   In the years since the Supreme Court articulated this heightened pleading standard, courts in this circuit have further expounded on its precise requirements.   As the Fourth Circuit has explained, a court "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'"  *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citation omitted).   And, as particularly pertinent here, a plaintiff must plead sufficient facts to create a plausible inference that each element necessary to state a claim for relief is met.  *Brown v. HSBC Mortg. Corp.*, No. 1:10–cv–1427, 2011 WL 3101780, at *1 (E.D. Va. July 22, 2011) (O'Grady, J.)

Plaintiffs' allegations do not measure up against this standard.   The very few, non-conclusory facts Plaintiffs do plead make clear that this case cannot survive scrutiny under the act of state doctrine, which prohibits tort claims that arise from quintessential acts of state, like these do.   But even if Plaintiffs' claims against IRI were not foreclosed by the act of state

doctrine, they still fail to state a claim under Virginia law because Plaintiffs' Complaint does not sufficiently allege critical elements of tortious interference with contract and tortious interference with business expectancy. In short, Plaintiffs' claims against IRI have no possibility of success, and the Court should dismiss those claims on the merits.[4]

### 1.     Plaintiffs' Claims against IRI Should be Dismissed Based on the Act of State Doctrine

The biggest roadblock to Plaintiffs' claims against IRI is the act of state doctrine, which is a judicially fashioned principle that "the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves." *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897).[5] As the Supreme Court held in *Oetjen v. Central Leather Co.*, "[t]o permit the validity of the acts of one sovereign State to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations." 246 U.S. 297, 304 (1918) (internal quotation marks and citation omitted).

The act of state doctrine is "typically characterized by two elements": "[f]irst, the act undertaken by the foreign state must be public, and second, the act must be completed within the sovereign's territory." *Eckert Int'l. ,v. Government of Sovereign Democratic Republic of Fiji*, 834 F. Supp. 167, 171 (E.D. Va. 1993). Under the act of state doctrine, "public acts" include "acts such as constitutional amendments, statutes, decrees and proclamations. . . . An official

---

[4] While IRI is also entitled to the protections of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, the Court need not decide this issue since Plaintiffs have failed to adequately plead a cause of action against IRI under *Twombly*, *Iqbal*, and the act of state doctrine.

[5] Motions to dismiss based on the act of state doctrine are decided under Federal Rule of Civil Procedure 12(b)(6). *Spectrum Stores, Inc., v. Citgo Petroleum, Corp.*, 632 F.3d 938, 948 (5th Cir. 2011).

pronouncement by a foreign government describing a certain act as governmental is ordinarily conclusive evidence of its official character." Restatement (Third) of Foreign Relations Law § 443, cmt. i (1986).

An "[a]ct of state issue[] . . . arise[s] when a court *must* decide-that is, when the outcome of the case turns upon-the effect of official action by a foreign sovereign." *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990) (emphasis in original). The act of state doctrine may be successfully invoked by private defendants "[w]hen the causal chain between defendant's alleged conduct and plaintiff's injury could not be determined without an inquiry into the motives of the foreign government." Restatement (Third) of Foreign Relations Law § 443, Reporters' Note 7 (1986); *see Hunt v. Mobil Oil. Corp.*, 550 F.2d 68 (2d Cir. 1977) (dismissing antitrust claim against private defendants because adjudication would have required court to sit in judgment of sovereign acts of Libyan government, which were the real cause of plaintiff's injury).

Taking the allegations in the Complaint as true, Plaintiffs' claims against IRI directly implicate the Marshall Islands' authority to regulate its flagged vessels – precisely the kind of "public" activity peculiarly exercised by "sovereigns." Plaintiffs allege, for instance, that "[t]he RMI Maritime Administrator (the "Administrator") has been delegated responsibility for performing various *governmental functions* on behalf of RMI including administering all matters pertaining to vessels of RMI that are subject to the provisions of the Maritime Act (the "Maritime Act"), promulgating rules and regulations to carry out the provisions of the Maritime Act, and ensuring the seaworthiness of vessels registered under the laws of the Republic [of the Marshall Islands]." Complaint ¶ 58 (emphasis added). Plaintiffs further allege that "[t]he business function of IRI is to provide technical and administrative services to the Administrator.

The types of services that IRI provides to the Administrator include without limitation technical, investigative, documentation, registration, seafarer identification, marketing, communications, legal, and regulatory support.  IRI assists the Administrator in performing its *government functions* all over the world and wherever vessels seeking to be registered under RMI's flag may be located."  *Id.* ¶ 59 (emphasis added).

Under maritime law, the flag State has the right and is, in fact, "required" "to exercise effective authority and control over the ship in administrative, technical, and labor matters; and . . . to take such measures as are necessary to ensure safety at sea. . . ." Restatement (Third) of Foreign Relations Law § 502(1)(a)-(b) (1986).  The flag State's responsibility to regulate its vessels continues at "all times wherever the ship is located."  *Id.* at cmt. a.  This is because "there must be some law on shipboard, that it cannot change at every change of waters, and no experience shows a better rule than that of the state that owns her."  *Lauritzen v. Larsen*, 345 U.S. 571, 585 (1953).  For all intents and purposes, then, a flag State is not only authorized but also obligated to regulate its flagged ships, regardless of their geographic location.[6] *Id.* at 584 ("[T]he territorial standard is so unfitted to [the maritime] enterprise conducted under many territorial rules and under none that it usually is modified by the more constant law of the flag.").

The Complaint makes clear that IRI merely implemented the RMI Maritime Administrator's decision, taken in its capacity as the duly appointed regulator for maritime

---

[6] Applying a territorial limitation to these acts of state is, therefore, neither practical nor legally required. *In re Refined Petroleum Prods. Antitrust Litig.*, 649 F. Supp. 2d 572, 594 (S.D. Tex. 2009), *aff'd Spectrum Stores, Inc., v. Citgo Petroleum, Inc.*, 632 F.3d 938 (5th Cir. 2011) (holding that the act of state doctrine does not embody a "strict territorial limitation"). It would also conflict with the Supreme Court's policy of "avoid[ing] the creation of an inflexible and all-encompassing rule to govern the application of the [act of state] doctrine," and applying the doctrine in a way that is "tempered by common sense." *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 521 (2d Cir. 1985) (internal quotation marks omitted). Indeed, the act of state's territoriality requirement was developed via case law

(footnote continued on next page)

entities in RMI, to prohibit RMI flagged vessels from working with AdvanFort during the period

of the suspension.  In relevant part, Plaintiffs allege that "[t]he day following the publication of

the Cartner/Maritime Executive article, on January 7, 2014, AdvanFort received a letter from the

RMI Maritime Administrator indicating that 'it was no longer permitted to provide security

services to Marshall Islands registered vessels, effective immediately.'"  *Id.* ¶ 65.  "Officials

from IRI then informed AdvanFort's clients that AdvanFort had committed illegal acts which

resulted in the ban, and customers of AdvanFort, whose vessels were flagged under RMI, were

directed not to allow AdvanFort personnel on their vessels." *Id.* ¶ 66.

      As these allegations suggest, AdvanFort's real grievance (if any) is not against IRI, but

against the RMI Maritime Administrator, acting pursuant to its appointment by the Republic of

the Marshall Islands, and its decision to prohibit the company from working with RMI flagged

vessels while under suspension. According to Plaintiffs' allegations, IRI merely acted as a

government agent, and did not suspend AdvanFort on its own initiative. For this reason, the

Court cannot determine IRI's liability in this case without sitting in judgment of and determining

whether the sovereign authority of the Marshall Island's government to regulate RMI flagged

ships was exercised in a legally correct way. *W.S. Kirkpatrick*, 493 U.S. at 406.  In other words,

Plaintiffs allege that their purported injuries – the interference with their alleged contracts and

business expectancies – were caused by their suspension by an arm of the Marshall Islands

government, the RMI Maritime Administrator, and ask the Court to adjudicate the legality and

propriety of this act of state.  Dismissal is accordingly required as a matter of law.

---

(footnote continued from previous page)
concerning sovereign takings of tangible property, where issues of territoriality are important.  *In re Refined Petroleum Prods. Antitrust Litig.*, 649 F. Supp. 2d at 594.

**2.      Plaintiffs Have Failed to Sufficiently Allege that IRI Tortiously Interfered with Contracts under Count III**

Even if their claims did not improperly seek to challenge acts of state (which they do), Plaintiffs' claims still fail because they do not adequately plead (and cannot adequately plead) violations of Virginia state law.  At the outset, it must be noted that Plaintiffs do not allege in Count III whether their purported contracts were or were not terminable at will, which is important under Virginia law because the elements of the claim depend on the type of contract. If they are proceeding under a tortious interference with contracts not terminable at will theory, Plaintiffs must state facts sufficient to satisfy the following legal elements: "'1) the existence of a valid contractual relationship or business expectancy; 2) knowledge of the relationship or expectancy on the part of the interferor; 3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4) resultant damage to the party whose relationship or expectancy has been disrupted.'"  *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 616 (E.D. Va. 2009) (quoting *Duggin v. Adams*, 360 S.E. 2d 832, 835 (Va. 1987)); *Nash v. Green Tree Servicing, LLC*, 943 F. Supp. 2d 640, 647 (E.D. Va. 2013) (O'Grady, J.).  To establish tortious interference with an at-will contract, plaintiff also "'must allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed *improper* methods.'"  *Zurich American Ins. Co., v. Turbyfill*, No. 7:10–cv–282, 2010 WL 4065527, at *3 (E.D. Va. Oct. 15, 2010) (quoting *Duggin*, 360 S.E. 2d at 836 (emphasis in original)).  "[This] additional requirement is necessary because 'an individual's interest in a contract terminable at will is essentially only an expectancy of future economic gain, and he has no legal assurance that he will realize the expected gain.'"  *Id.* (quoting *Duggin*, 360 S.E. 2d at 836).  Even though Plaintiffs' Complaint contains no allegations about the types of contracts IRI purportedly interfered with, Plaintiffs claim fails under both standards.

First, Plaintiffs have not sufficiently alleged "the existence of a valid contractual relationship or business expectancy." In their Complaint, Plaintiffs claim they "had contractual relationships with various customers who were Marshall Island flagged vessels, vessel owners and operators, and had contractual relationships with their employees and contractors who worked in service of those contracts." Complaint ¶ 109. Plaintiffs do not, however, present any factual allegations regarding specific, valid contracts with which IRI allegedly interfered, as required under Virginia law.[7] *See Masco Contr. Servs. East, Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003) (tortious interference claims only provide a remedy for interferences with a "particular party's *specific*, existing contract or business expectancy") (emphasis in original); *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 391 (E.D. Va. 2002) ("Because plaintiffs do not identify the specific business relationships with which defendant has interfered, plaintiffs' tortious interference claim fails.")

Second, Plaintiffs have not adequately alleged that IRI had "knowledge of the relationship or expectancy." They have not pled in any detail that IRI knew which or, in fact, any RMI flagged vessels had contracts or business relationships with AdvanFort, let alone that IRI was aware of any specific contracts or business arrangements between those vessels and AdvanFort. *See Alliance Technology Group, LLC v. Achieve 1, LLC*, No. 3:12-CV-701, 2013 WL 143500, at *7 (E.D. Va. Jan. 11, 2013) (holding that plaintiff had failed to state a claim for

---

[7] To sufficiently plead a claim for tortious interference with contracts, Plaintiffs must also state a claim for breach of contract. *U.S. Golf Learning Institute, LLC, v. Club Managers Ass'n of America*, No. 1:11-CV-869, 2011 WL 5599379, at *3 (E.D. Va. Nov. 15, 2011) (holding that "a claim for breach of contract . . . is . . . a requirement for a tortious interference claim."). This requires that plaintiff allege: "(1) [the] existence of a contract; (2) performance or offers by plaintiff to perform under the contract; (3) defendant failed to perform under the contract or breached the agreement; and (4) the breach caused actual damage to plaintiff." *Id.* Because Plaintiffs have failed to point to any actual contracts with which IRI interfered, they have similarly failed to state a claim for breach of contract as to those claims.

tortious interference with contracts where it did not allege defendant had knowledge of the

contract terms).  Instead, Plaintiffs make the bare allegation that "IRI and Cartner had knowledge

of these contracts."  Complaint ¶ 110.  Without any additional factual support, this plainly

conclusory statement cannot reasonably support an inference that IRI had the requisite

knowledge in this case.  *See Alliance Technology Group*, 2013 WL 143500 at *7 ("While

knowledge . . . may be alleged generally, it must still be accompanied by allegations of fact

giving rise to a reasonable inference of knowledge. . . .").

Third, Plaintiffs have similarly provided no factual allegations that IRI intentionally

interfered with any of their contracts or business relationships.  Once again, Plaintiffs merely

recite the elements of a tortious interference claim, alleging that "IRI . . . intentionally and

tortiously interfered with these contracts. . .," Complaint ¶ 111, without providing any factual

basis for this allegation.  In fact, Plaintiffs' Complaint clearly indicates that any harm AdvanFort

experienced was only incidental to IRI's purported actions.  According to Plaintiffs' own

allegations, IRI acted in its official capacity as the administrative and technical service provider

to the RMI Maritime Administrator, which acted in its role as an arm of the Marshall Islands to

regulate RMI flagged vessels.  *Id.* ¶¶ 59, 65-67.  As a matter of law, these allegations cannot be

used to demonstrate that IRI had the requisite intent to cause the breach or termination of

Plaintiffs' contracts or business relationships.  *See Commercial Energies, Inc., v. United Airlines,*

*Inc.*, 25 F.3d 1038, at *12 (4th Cir. 1994) (under Virginia law, "it is not adequate to allege that

the [tortious] conduct was aimed at some other purpose and incidentally affected a business

relationship").

Fourth, Plaintiffs have also failed to adequately plead damages. To properly allege this

element of a tortious interference claim, plaintiff must do more than make general claims about

the damages it has purportedly suffered.  *See Eurotech*, 189 F. Supp. 2d at 390 (holding that

plaintiff had failed to sufficiently allege damages where it only claimed defendant had prevented

it from entering into business relations with third-parties, without more). Instead, plaintiff must

present allegations plausibly demonstrating that its damages resulted from defendant's purported

interference with specific contracts or business relationships.  In their Complaint, Plaintiffs

allege that "[b]y the time AdvanFort was reinstated [by the Marshall Islands] . . . it had lost a

significant portion of its customer base. AdvanFort, thus, lost customers, clients, and, on

information and belief, prospective clients and business opportunities as a result of the damage

caused by the publication of the Article and the conduct of the IRI."  Complaint ¶¶ 71-72.  These

vague and conclusory allegations, which do not refer to any particular contract or business

relationship AdvanFort had with customers or clients, fails to satisfy the requirements for

pleading tortious interference with contracts.[8] *Eurotech*, 189 F. Supp. 2d at 390-91 (holding that

in the absence of allegations regarding the existence of specific contractual relationships,

plaintiff cannot adequately allege the damages element of a tortious interference claim).

Finally, Plaintiffs have not sufficiently alleged that IRI employed "improper methods" in

complying with the RMI Maritime Administrator's sovereign decision about its maritime affairs.

Under Virginia law, "improper methods include a wide variety of conduct. Means that are illegal

---

[8] In addition to claiming compensatory damages, Plaintiffs also request punitive damages against IRI for both Counts III and IV.  "Punitive damages, the purpose of which is not so much to compensate the plaintiff but to punish the wrongdoer and to warn others, may be recovered 'only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others.'"  *Simbeck, Inc., v. Dodd-Sisk Whitlock Corp.*, 44 Va. Cir. 54, 65 (Va. Cir. Ct. 1997) (quoting *Giant of Virginia, Inc. v. Pigg*, 152 S.E. 2d 271, 277 (1967)).  Punitive damages are "not favored generally and, because punitive damages are in the nature of a penalty, they should be awarded only in cases of the most egregious conduct."  *Id.* at 66 (internal quotation marks, citation, and alterations omitted).  There are simply no allegations in Plaintiffs' Complaint that in any way suggest IRI engaged in "egregious conduct," consciously disregarded "the rights of others," or otherwise acted in any way that would justify the imposition of punitive damages in this case.

or independently tortious such as violations of statutes, regulations, or recognized common-law rules are improper. Improper methods may also include violations of established standards of a trade or profession or unethical conduct. . . . [S]harp dealing, overreaching, or unfair competition may also constitute improper methods." *Skillstorm*, 666 F. Supp. 2d at 616 (internal citations and quotation marks omitted).

In their Complaint, Plaintiffs allege that "[t]he methods by which . . . IRI [has] interfered . . . have been improper and consisted of, among other things, sharp dealing, unfair competition, defamation, and undue influence. . . .," Complaint ¶ 112, but provide no factual allegations that support these claims.  Plaintiffs do not allege that IRI was a "competitor" of any of the Plaintiffs, or present any other specific actions by IRI that could be described or categorized as acts of "sharp dealing," "unfair competition," "undue influence" or "defamation."  All Plaintiffs have alleged is that IRI implemented the RMI Maritime Administrator's decision regulating Marshall Islands maritime matters, *id.* ¶¶ 58-59, 65-67, and that IRI did not "provid[e] proper notice to AdvanFort or a meaningful opportunity to respond to the allegations." *Id.* ¶ 68.  Plaintiffs do not allege any specific rules, regulations, laws or commercial or professional standards that the RMI Maritime Administrator supposedly violated in issuing the suspension, or that IRI itself had any legal responsibility regarding such notice or procedures.  Taking Plaintiffs' allegations as true, they provide little more than "labels and conclusions," and fall far short of pleading a cognizable claim of "improper methods." *Iqbal*, 556 U.S. at 678; *see Skillstorm*, 666 F. Supp. 2d at 616, 619-20 (holding that plaintiff failed to sufficiently allege "improper methods" based on defamation where it had not pled any defamatory action with the factual support necessary under Rule 8(a), *Twombly*, and *Iqbal*).

### 3.     Plaintiffs Have Failed to Sufficiently Allege that IRI Tortiously Interfered with Business Expectancies under Count IV

For the same reasons Count III fails, Plaintiffs' claim that IRI tortiously interfered with business expectancies in Count IV also cannot survive. Under Virginia law, "[t]he elements of tortious interference with [business expectancies] are very similar to those of tortious interference with contract." *Mansfield M.D. v. Anesthesia Assocs. Ltd*, No. 1:07-cv-941, 2008 WL 1924029, at *6 (E.D. Va. Apr. 28, 2008).  In order to adequately plead tortious interference with business expectancies, a plaintiff must: "(1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference." *Commerce Funding Corp. v. Worldwide Sec. Serv. Corp.*, 249 F.3d 204, 213 (4th Cir. 2001).  Plaintiff must also allege that defendant used "improper methods" in interfering with these relationships. *See id.* at 214 (describing tortious interference with business expectancies as requiring same "improper methods" necessary to establish tortious interference with at-will contracts).

Once again, Plaintiffs have relied on vague and conclusory claims regarding their purported, future business expectancies.  Complaint ¶ 116 ("Plaintiffs had business relationships and expectancies with Marshall Island flagged vessels with a reasonable probability of future economic benefit to Plaintiffs.").  They have failed to allege any specific business expectancy with which IRI interfered, as required under Virginia law.  *Masco Contr. Servs. East*, 279 F. Supp. 2d at 709.  Nor have Plaintiffs presented sufficient allegations showing they had a "probability" of "future economic benefit," which is required to establish the tort's first and third elements.  *Peterbilt of Bristol, Inc., v. Mac Trailers, Mfg.*, No. 1:09-CV-00058, 2009 WL

4063663, at *3 (W.D. Va. Nov. 23, 2009).  Plaintiffs claim that "AdvanFort had the necessary

resources and personnel committed to continued [sic] efforts under its contacts and justifiable

expectations of future business servicing vessels registered under the RMI flag," Complaint ¶ 73,

and, therefore, "had a reasonable expectancy in continuing its work and realizing future profits

from its contracts and business relationships." *Id.* ¶ 74.  At most, these bare allegations suggest

Plaintiffs may have had the "possibility" of future economic benefit, which on its own cannot

sustain a tortious interference claim. *See Peterbilt of Bristol*, 2009 WL 4063663, at *3 ("The

mere possibility of a future business relationship is not enough. . . . Rather, a plaintiff must meet

an objective standard and establish a probability of future economic benefit.") (citation and

internal quotation marks omitted); *Commercial Business Sys. v. Halifax Corp.*, 484 S.E. 2d 892,

897 (Va. 1997) (holding that plaintiff must establish the "probability" of future economic benefit

and that the "possibility" of such a benefit is insufficient to support a claim for tortious

interference with business expectations).

Plaintiffs have also failed to allege that IRI had any knowledge of AdvanFort's specific

business relationships and expectancies, and claim only that it "had knowledge of Plaintiffs'

expectancy to continue the work and of the probability of future economic benefit to

Plaintiff[sic] from these relationships and expectancies." Complaint ¶ 121. This allegation,

which is not supported by any factual detail, cannot give "rise to a reasonable inference of

knowledge" on the part of IRI.  *Alliance Technology Group*, 2013 WL 143500 at *7.  Plaintiffs

have similarly failed to demonstrate that IRI's "essential aim or purpose" was to interfere with

AdvanFort's future business expectancies, or that it had any intent other than to implement the

RMI Maritime Administrator's decision about Marshall Islands flagged vessels.  *Eurotech*, 189

F. Supp. 2d at 390 (holding that plaintiff failed to plead tortious interference with business

expectancies because any harm to plaintiff was an "incidental effect" and not "the essential aim or purpose of defendant").

As for Plaintiffs' allegations regarding damages, they assert that "but for the Defendants' intentional and tortious interference, Plaintiffs would have realized their business expectancies by, among other things, obtaining additional work as well as possible other private maritime security contracts and possible novations," Complaint ¶ 122, and that "Plaintiffs have suffered damages, the full extent of which are not yet known. . . ." *Id.* ¶ 125.  Because Plaintiffs cannot point to any specific business expectancy from any particular client or customer, or that IRI's actions directly interfered or caused the termination of those expectancies, their damages claim remains too vague and indeterminate to survive a motion to dismiss.

Finally, as in Count III, Plaintiffs have failed to present factual allegations of any kind that suggest IRI used "improper methods" in purportedly interfering with their business expectancies, or did anything other than comply with the RMI Maritime Administrator's decision, acting as an arm of the Marshall Islands government, to suspend AdvanFort.  *Iqbal*, 556 U.S. at 678; *Skillstorm*, 666 F. Supp. 2d at 616, 619-20.

### B.   Plaintiffs' Complaint Fails to State Facts Sufficient to Establish that Any Cause of Action against IRI Was Properly Joined in the Same Lawsuit with the Cause of Action against the Other Defendants

Even if Plaintiffs had stated a cause of action, yet another problem with their Complaint results from the manner in which they improperly sought to join their claims against IRI, stemming from their Marshall Islands' suspension, with their defamation claims against TME and Mr. Cartner, stemming from the publication of the article about AdvanFort.  These claims could not properly be joined under Virginia law, and thus may not properly be joined to defeat federal jurisdiction here.  *See* 28 U.S.C. § 1441(b)(2) (describing diversity removal jurisdiction

as including only "properly joined" defendants).  This plainly improper joinder should result in dismissal of the claims against IRI here.

**<u>Misjoinder of Causes of Action:</u>**  Under Virginia law, a party may join together in a single lawsuit only those claims that "arise out of the same transaction or occurrence."  Va. Code Ann. § 8.01-272.  In *Powers v. Cherin*, 452 S.E. 2d 666 (Va. 1995), the Virginia Supreme Court construed this statutory language in deciding whether a plaintiff  injured in an automobile accident properly joined both the driver of the car and the dentist who had treated her afterwards in the same lawsuit.  The question before the Virginia Supreme Court was "whether a cause of action for damages resulting from the negligent operation of an automobile may be joined in the same motion for judgment with a cause of action for damages resulting from medical malpractice." *Id.* at 667.  The Virginia Supreme Court answered the question with a resounding "no," finding the "statutory language so plain and unambiguous that it requires no interpretation." *Id.* at 669.  As the court explained,

> [m]anifestly, the plaintiff's claim against [the driver] for negligent operation of an automobile does not arise from the same transaction or occurrence as the plaintiff's claim against Dr. Cherin for medical malpractice. Rather, the amended motion for judgment sets forth two transactions or occurrences: first, the negligent operation of a motor vehicle by Pope resulting in an accident; and, second, the negligent medical treatment of plaintiff at a later date by Dr. Cherin resulting in injury.

*Id.*  One factor central to the appellate court's analysis was that the dentist defendant "cannot be liable for the injuries sustained in the motor vehicle accident . . . ." *Id.* As a result, the Virginia Supreme Court ruled that "because there was a fatal misjoinder of causes of action, we hold that the trial court properly sustained the demurrer." *Id.*

Just as in *Powers*, the Plaintiffs here have improperly sought to join two transactions and occurrences in the same lawsuit:  First, a claim for defamation against Mr. Cartner and TME

arising out of the publication of Mr. Cartner's article; and, second, a tortious interference claim

arising out of a letter sent, allegedly by the RMI Maritime Administrator, to AdvanFort and/or

AdvanFort International apparently indicating that "it was no longer permitted to provide

security services to Marshall Islands registered vessels, effectively immediately."  Complaint ¶

65.  Just as in *Powers*, these transactions are misjoined because IRI cannot conceivably be held

liable for any damages resulting from the first transaction – i.e., the publication of the article.  As

a result, under Virginia law there is unquestionably a fatal misjoinder of causes of action, and the

counts against IRI must be dismissed, just as the misjoined counts were dismissed in *Powers*.

**Misjoinder of Parties:**  Not only did the Plaintiffs misjoin causes of action, they also

misjoined parties in connection with Counts III and IV.  As noted above, those counts allege

tortious interference arising out of a letter sent, allegedly by the RMI Maritime Administrator, to

AdvanFort and/or AdvanFort International apparently indicating that "it was no longer permitted

to provide security services to Marshall Islands registered vessels, effectively immediately."  *Id.*

¶ 65.  Nonetheless, and without explanation, Plaintiffs joined IRI with Mr. Cartner in that count,

despite the fact that the Complaint contains no allegations that IRI acted in concert or jointly

with Mr. Cartner, and despite the fact that Mr. Cartner's alleged conduct involves a different

transaction and different sorts of damages.  As the Virginia Supreme Court noted in *Powers*,

where a party is improperly joined in a case that arose from a separate transaction or occurrence,

the proper remedy is dismissal.  *Powers*, 452 S.E. 2d at 667.

    **C.**    **Plaintiffs' Complaint Fails to State Facts Sufficient to Establish that Any of
the Plaintiffs Has the Legal Right or Standing to Assert the Claims in Counts
III and IV against IRI**

As a final matter, the Court should also dismiss this case because Plaintiffs have failed to

establish their legal right or standing to assert these claims.  The party invoking the federal

court's jurisdiction has the burden of establishing standing.  *Miller v. Brown*, 462 F.3d 312, 316

(4th Cir. 2006). To meet this burden, the party must demonstrate: (1) that it has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) that the "injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court"; and (3) that the injury is "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992) (internal citations, quotation marks, and alterations omitted).

Because standing is an essential element of Plaintiffs' case on which they bear the burden of proof, their failure to properly allege standing can implicate Fed. R. Civ. P. 12(b)(6). *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 594 & n. 2 (2d Cir. 1993) (stating that "dismissals for lack of standing may be made pursuant to Fed. R. Civ. P. 12(b)(6), rather than 12(b)(1)" and clarifying that "standing and *subject matter jurisdiction* are separate questions") (emphasis in original). But the lack of constitutional standing also implicates Article III's "case or controversy" requirement, and thus potentially requires scrutiny under Fed. R. Civ. P. 12(b)(1). *CGM, LLC v. BellSouth Telecoms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011); *see Carter Machinery Co. Inc. v. Gonzalez*, No. Civ. A. 97–0332–R, 1998 WL 1281295, at *3 (W.D. Va. Mar. 27, 1998) (dismissing plaintiff's claim for tortious interference with business relations under Rule 12(b)(1)). When resolving a motion under Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citation omitted). Ultimately, the plaintiff bears the burden of "clearly ... alleg[ing] facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). The district court should grant the Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts

are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (internal quotation marks and citation omitted).

Measured under any standard, Plaintiffs lack the legal ability to bring this lawsuit against IRI.  In their Complaint, Plaintiffs do not allege that either corporate plaintiff is registered as a foreign corporation or otherwise authorized to transact business in the State of Virginia. AdvanFort Company Inc., which purportedly has its corporate headquarters in Virginia, Complaint ¶ 1, is not registered in the State and has not been issued a certificate of authority to transact business in Virginia.[9]  There are also no allegations suggesting AdvanFort International, Inc., has met these requirements.[10]  According to Virginia law, "[a] foreign corporation transacting business in the Commonwealth without a certificate of authority may not maintain a proceeding in any court in the Commonwealth until it obtains a certificate of authority."  Va. Code Ann. § 13.1-758.  This statute applies with full force to diversity actions in federal district court in Virginia.  *See Rock-Ola Mfg. Corp. v. Wertz*, 249 F. 2d 813, 814 (4th Cir. 1957) ("If the doors of a State's courts are properly shut to a foreign corporation, it is now settled that the corporation is likewise barred from suing, on the basis of diversity of citizenship, in a Federal court sitting in that state"); *Moore v. Northern Homes of Pennsylvania, Inc.*, 80 F.R.D. 278, 282 (W.D. Va. 1978) (holding that the statute is "an absolute bar to the offender's use of the courts to press its claim until compliance with the statutes is effected").  As a result, neither AdvanFort Company Inc. nor AdvanFort International is authorized to maintain this suit against IRI.

Nor do the individual plaintiffs have standing to assert any claims against IRI.  "To have standing to sue for damages for tortious injury to property, a plaintiff must have an interest in the

---

[9] Virginia State Corporation Commission, Certificate of Fact for AdvanFort Company (Exhibit B).

[10] Virginia State Corporation Commission, Certificate of Fact for AdvanFort, International (Exhibit C).

property injured." *Keepe v. Shell Oil Co.*, 260 S.E. 2d 722, 724 (Va. 1979).  Where corporations are concerned, shareholders, managers, owners or employees do not have legal standing to bring suit for tortious interference on the company's behalf.  *Id.; see  Schur v. Sprenkle*, 84 Va. Cir. 418, at *6 (Va. Cir. Ct.  2012) (holding that plaintiff, who was owner of a limited liability corporation, could not bring suit for tortious interference with regards to contracts that were between the corporation and third-parties and to which he was not a party).  "The corporation is a legal person, separate and distinct from the persons who own it, and the corporation, as the alleged owner and operator of the business, is the person entitled to" bring the claim.  *Keepe*, 260 S.E. 2d at 724.

In this case, the individual Plaintiffs have not alleged they are parties to any specific contracts or would have been parties to any specific business expectancy with which IRI allegedly interfered.  Indeed, Plaintiffs' allegations against IRI focus exclusively on purported injuries to "AdvanFort."  Complaint ¶¶ 57-80.  And even then, Plaintiffs do not specify which AdvanFort corporate entity was purportedly injured since the Complaint fails to make clear which AdvanFort entity supposedly possessed any purported contractual relationships or business expectancies.  Accordingly, the individual Plaintiffs have not presented sufficient allegations to demonstrate they have standing to bring suit against IRI in this matter, and, to the extent the boilerplate allegations of injury made by AdvanFort do not sufficiently state facts sufficient even to determine *which* AdvanFort entity was supposedly injured, the corporate entities lack standing as well.

## <u>CONCLUSION</u>

For the foregoing reasons, IRI respectfully requests the Court grant its Motion to Dismiss the Complaint with prejudice.

Respectfully submitted,


February 26, 2015

/s/ Charles F. B. McAleer, Jr.
Charles F. B. McAleer, Jr. (VSB No. 24430)
Timothy P. O'Toole (VSB #39739)
Maryam Jamshidi (*)
Miller & Chevalier Chartered
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 626-5800
Facsimile:   (202) 626-5801
Email: cmcaleer@milchev.com
(*) *pro hac vice* application to be filed

*Attorneys for Defendant*
*International Registries, Inc.*

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 26 day of February, 2015, a true copy of the foregoing was sent by first-class mail, postage prepaid, to the following:

David G. Barger
Theresa A. Queen
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102
Counsel for Plaintiffs

Thomas G. Connolly
Harris, Wiltshire & Grannis LLP
1919 M Street, N.W., 8th Floor
Washington, D.C. 20036-3537
Counsel for Defendant John A.C. Cartner

Charles B. Molster, III
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006
Counsel for Defendant The Maritime Executive LLC

/s/Charles F. B. McAleer, Jr.
Charles F. B. McAleer, Jr.
Miller & Chevalier Chartered
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 626-5800
Facsimile:  (202) 626-5801
Email: cmcaleer@milchev.com
*Counsel for Defendant International Registries, Inc.*